FILED

2019 MAY -3 PM 3: 47

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>TENNY GUON LIM,<br>  aka "The Goat,"<br>  aka "Max Power,"<br>  aka "Wild,"<br>  aka "Bruce,"<br>  aka "Phil,"<br>FNU LNU,<br>  aka "Orange Tang,"<br>DARIO BARUCA,<br>  aka "Ventura,"<br>  aka "Fat Dario,"<br>TAO BO LIANG,<br>  aka "Phil,"<br>  aka "Boobz,"<br>NIKOLA GALIC,<br>  aka "Leo,"<br>ABATE SAMUEL ERASTO,<br>  aka "Robert,"<br>JUMSHER SINGH SAROYA,<br>  aka "Larry Bird,"<br>MICHAEL ALAN SHEPHERD,<br>ERNEST KWEKU TAYLOR,<br>SAYSANA LUANGKHAMDENG,<br>  aka "Say,"<br>  aka "George,"<br>  aka "Wheels,"<br>FNU LNU,<br>  aka "LB,"<br>  aka "Deathmetal," | CR No. 19- 19 CR 00275 AB<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute, and to Possess with Intent to Distribute, Controlled Substances; 21 U.S.C. § 963: Conspiracy to Import and Export Controlled Substances] |

TYE MCNABB,
DAVID BRUNO JONER,
  aka "Boss Bob,"
AMY KIM HARTLMUELLER-TORRES,
  aka "Betty,"
JEFF ALLYN WALKER,
  aka "Mark," and
DENNY VUONG,

       Defendants.

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about May 3, 2019, in Los Angeles County, Orange County, and San Bernardino County, each within the Central District of California, in the country of Canada, and elsewhere, defendants TENNY GUON LIM, also known as ("aka") "The Goat," aka "Max Power," aka "Wild," aka "Bruce," aka "Phil" ("LIM"), First Name Unknown Last Name Unknown ("FNU LNU"), aka "Orange Tang" ("ORANGE TANG"), DARIO BARUCA, aka "Ventura," aka "Fat Dario" ("BARUCA"), TAO BO LIANG, aka "Phil," aka "Boobz" ("LIANG"), NIKOLA GALIC, aka "Leo" ("GALIC"), ABATE SAMUEL ERASTO, aka "Robert" ("ERASTO"), JUMSHER SINGH SAROYA, aka "Larry Bird" ("SAROYA"), MICHAEL ALAN SHEPHERD ("SHEPHERD"), ERNEST KWEKU TAYLOR ("TAYLOR"), SAYSANA LUANGKHAMDENG, aka "Say," aka "George," aka "Wheels" ("LUANGKHAMDENG"), FNU LNU, aka "LB," aka "Deathmetal" ("LB"), TYE MCNABB ("MCNABB"), DAVID BRUNO JONER, aka "Boss Bob" ("JONER"), AMY KIM HARTLMUELLER-TORRES, aka "Betty" ("TORRES"), JEFF ALLYN WALKER, aka "Mark" ("WALKER"), and DENNY VUONG ("VUONG"), and others known and unknown to the Grand Jury, conspired and agreed with

each other to knowingly and intentionally distribute and to possess with intent to distribute the following controlled substances:

1.    at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(ii)(II);

2.    at least 500 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B)(ii)(II);

3.    at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii); and

4.    3,4-Methylenedioxyamphetamine ("MDMA" or "ecstasy"), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
       ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.    Defendants LIM, ORANGE TANG, and LB and others known and unknown would arrange to purchase bulk quantities of cocaine and methamphetamine from the United States for importation to Canada and other locations for re-sale, in exchange for bulk quantities of MDMA or for currency.

2.    Defendant LIM and others known and unknown would arrange for the transportation of MDMA from Canada into the United States for re-sale.

3.    Defendants LIM, ORANGE TANG, BARUCA, GALIC, ERASTO, SAROYA, SHEPHERD, LB, MCNABB, JONER, and TORRES, and others known and unknown would arrange for the transportation of cocaine and methamphetamine from the United States to Canada and other locations for re-sale.

4.    Defendant LIM and others known and unknown would provide code names, telephone numbers, and serial numbers of dollar bills to co-conspirators to use as a "token" for identification purposes during the exchange of cocaine and MDMA in the United States.

5.    Defendant VUONG would provide encrypted Blackberry devices to other co-conspirators to use to communicate with each other regarding drug trafficking business, including the transportation of cocaine, MDMA, and methamphetamine between the United States and Canada.

6.    Defendant SAROYA, acting at the direction of defendant LIM, would meet with co-conspirators in the United States to establish new sources of supply for cocaine and new routes for transportation of cocaine from the United States to Canada.

7.    Defendant LUANCHKHAMDENG would deliver MDMA from Canada to co-conspirators in the United States for re-sale.

8.    Defendants LIANG, LUANGKHAMDENG, and WALKER would pick up cocaine from co-conspirators in the United States for eventual transportation to Canada for re-sale.

9.    Defendant TAYLOR would travel to the United States to pass messages from Canadian co-conspirators to co-conspirators in the United States to facilitate the transportation of cocaine, MDMA, and methamphetamine between Canada and the United States.

C.    OVERT ACTS

       In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants LIM, ORANGE TANG, BARUCA, LIANG, GALIC, ERASTO, SAROYA, SHEPHERD, TAYLOR, LUANGKHAMDENG, LB, MCNABB, JONER, TORRES, WALKER, and VUONG, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, Orange County, and San Bernardino County, each within the Central District of California, in the country of Canada, and elsewhere, including, but not limited to, the following:

       1.    On or about April 20, 2017, using coded language in a series of text messages, defendant LIM informed a co-conspirator, who later agreed to cooperate with law enforcement ("CHS1"), that defendant LIM could send MDMA once a week from Canada to CHS1 in the Los Angeles, California area, and that on the following day defendant LIM would give CHS1 the schedule for upcoming deliveries of MDMA.

       2.    On or about April 21, 2017, using coded language in a text message, defendant LIM told CHS1 that defendant LIM had 24 kilograms of MDMA ready to send to CHS1.

       3.    On or about April 21, 2017, using coded language in a text message, defendant LIM told CHS1 that defendant LIM missed this week's shipment of MDMA and would have to wait for next week to send MDMA to CHS1.

       4.    On or about April 24, 2017, using coded language in a text message, defendant LIM told CHS1 that defendant LIM had 24 kilograms of MDMA ready to send to CHS1.

       Importation of Approximately 25 Kilograms of Suspected MDMA

       5.    On or about May 7, 2017, using coded language in a series of text messages, defendant LIM told CHS1 that defendant LIM had

5

three drug couriers, including defendant LUANGKHAMDENG, waiting in Long Beach, California to pick up cocaine from CHS1, and defendant LIM asked CHS1 to arrange to deliver the cocaine to defendant LIM's drug couriers the following day.

6. On or about May 9, 2017, using coded language in a series of text messages, defendant LIM instructed CHS1 to tell defendant LUANGKHAMDENG to return to Canada from the United States because the cocaine that defendant LIM was supposed to receive was not yet ready for pick up.

7. On or about May 14, 2017, using coded language in a series of text messages, defendant LIM told CHS1 that defendant LIM believed the encrypted cellular devices the conspirators had been using to communicate with each other had been "compromised" by the National Security Agency; that defendant LIM was going to start using different encrypted cellular devices that were "resistant from law enforcement"; and that defendant LIM would send new encrypted devices to CHS1 to use in future communications in furtherance of the conspiracy.

8. On or about May 14, 2017, using coded language in a text message, defendant LIM asked CHS1 whether CHS1 had cocaine to send to defendant LIM in Canada, and whether defendant LIM should send MDMA to CHS1 in Long Beach as compensation for such cocaine.

9. On or about May 15, 2017, using coded language in a text message, defendant LIM told CHS1 that defendant's LIM's "partners" wanted to send more MDMA to CHS1 in Long Beach, but that the partners wanted to know whether CHS1 had cocaine ready to send to Canada.

10. On or about May 23, 2017, using coded language in a series of text messages, defendant LIM asked CHS1 whether CHS1 would have

6

the cocaine ready to send to Canada that week, and whether defendant LIM should send more MDMA from Canada to CHS1 in Long Beach.

11.  On or about May 26, 2017, using coded language in a text message, defendant LIM told CHS1 that defendant LUANGKHAMDENG would deliver MDMA to CHS1 that Sunday or sometime after, and defendant LIM asked CHS1 whether CHS1 had cocaine ready to give to defendant LUANGKHAMDENG in exchange for the MDMA.

12.  On or about May 29, 2017, using coded language in a series of text messages, defendant LIM told CHS1 that defendant LUANGKHAMDENG may not be able to travel from Canada to Long Beach to deliver MDMA to and pick up cocaine from CHS1, but that defendant LIM would attempt to arrange defendant LUANGKHAMDENG's travel to Long Beach to do so.

13.  On or about June 2, 2017, using coded language in a series of text messages, defendant LIM told CHS1 that defendant LUANGKHAMDENG would leave Vancouver, British Columbia, Canada, on Monday to deliver MDMA to and pick up cocaine from CHS1 in Long Beach.

14.  On or about June 5, 2017, using coded language in a series of text messages, defendant LIM told CHS1 that defendant LUANGKHAMDENG had to delay his trip to Long Beach to deliver MDMA and pick up cocaine until the following day.

15.  On or about June 10, 2017, defendant LUANGKHAMDENG attempted to cross the United States-Canada border in Blaine, Washington while in possession of approximately 24.2 kilograms of suspected MDMA in his vehicle, which he intended to distribute.

Discussion of Transportation of Cocaine from California to Canada

16.   On or about September 6, 2017, using coded language in a series of text messages, defendant WALKER asked defendant MCNABB whether defendant MCNABB had any good news about the transportation of cocaine from California to Canada that week; to which defendant MCNABB responded that defendant WALKER would receive payment on September 12, 2017 for a prior load of cocaine he had transported.

17.   On or about November 27, 2017, using coded language in a series of text messages, defendant WALKER asked defendant MCNABB for the location in California at which defendant WALKER would pick up cocaine; to which defendant MCNABB replied that a third party would call defendant WALKER on his cellular phone that evening with the location.

18.   On or about November 28, 2017, in a text message, defendant WALKER sent defendant MCNABB a photograph of the serial number of a dollar bill, which defendant WALKER would use as a "token" for identification purposes when picking up cocaine in California.

19.   On or about November 30, 2017, using coded language in a text message, defendant WALKER told defendant MCNABB that he would return from California that evening with cocaine defendant WALKER received that day.

20.   On or about November 30, 2017, using coded language in a series of text messages, defendant WALKER asked defendant MCNABB whether defendant WALKER would be paid in Canadian or Mexican currency for transporting cocaine; to which defendant MCNABB replied that they would talk in person about it the following day.

21.   On or about December 1, 2017, using coded language in a series of text messages, defendant WALKER asked defendant MCNABB when

1   they should meet up that day so that defendant WALKER could pick up
2   $10,000 as payment for transporting cocaine.

3               Sale of Encrypted Devices to Discuss Drug Trafficking

4         22.  On or about February 3, 2018, using coded language in a
5   recorded telephone call, defendant LIM told an individual whom he
6   believed to be a drug supplier, but who was, in fact, cooperating
7   with law-enforcement ("CHS2"), that defendant LIM had a drug courier
8   who could pick up cocaine in the Los Angeles area for transportation
9   to Canada.

10        23.  On or about February 3, 2018, using coded language in a
11  recorded telephone call, defendant LIM told CHS2 that defendant LIM
12  would send CHS2 the phone number of a co-conspirator who would sell
13  encrypted cellular devices to CHS2 for use in securely communicating
14  with defendant LIM about drug trafficking.

15        24.  On or about February 6, 2018, using coded language in a
16  text message, defendant LIM asked CHS2 whether CHS2 would have
17  cocaine ready this week for delivery to defendant LIM.

18        25.  On or about February 6, 2018, using coded language in a
19  text message, defendant LIM sent CHS2 a code name and phone number
20  for defendant VUONG who would sell CHS2 encrypted cellular devices.

21        26.  On or about February 9, 2018, in Alhambra, California,
22  defendant VUONG, acting at the direction of defendant LIM, sold two
23  encrypted cellular devices to an undercover agent posing as an
24  associate of CHS2 in exchange for $2,500.

25        27.  On or about February 14, 2018, using coded language in a
26  series of text messages, defendant LIM ordered 25 kilograms of
27  cocaine from CHS2 and gave CHS2 a code name and phone number for the
28  individual who would pick up the cocaine from CHS2; defendant LIM

                                      9

1  also sent a serial number of a dollar bill, which the individual

2  would use to identify himself.

3  Discussion of Transportation of Cocaine from California to Canada

4      28.  On or about March 2, 2018, using coded language in a text

5  message, defendant MCNABB told defendant WALKER that there would be

6  no transportation of cocaine the following day.

7      29.  On or about March 2, 2018, using coded language in a text

8  message, defendant WALKER told defendant MCNABB that defendant WALKER

9  was waiting to cross the border from Canada back to the United

10 States.

11 Possession with Intent to Distribute Approximately 47 Kilograms of

12                Methamphetamine and 5 Kilograms of Cocaine

13     30.  On or about March 7, 2018, in Redlands, California,

14 defendants ERASTO and GALIC rented a storage locker at Extra Space

15 Storage (the "Extra Space Storage locker") for the purpose of storing

16 controlled substances.

17     31.  On or about March 11, 2018, using coded language in a

18 recorded telephone call, defendant LIM told CHS2 that defendant LIM

19 would give CHS2 the phone number for defendant LIM's associate for

20 CHS2 to use in setting up a meeting in the Los Angeles area to

21 discuss the transportation of cocaine from California to Canada.

22     32.  On or about March 15, 2018, in Redlands, California,

23 defendant SHEPHERD rented a storage locker at Public Storage (the

24 "Public Storage locker") for the purpose of storing controlled

25 substances.

26     33.  On or about March 17, 2018, using coded language in a text

27 message, defendant LIM sent CHS2 a code name, phone number, and

28 dollar bill serial number for defendant SAROYA, who would meet with

CHS2's associate in the Los Angeles area in order to discuss the transportation of cocaine from California to Canada.

34.  On or about March 28, 2018, in Los Angeles, defendant SAROYA, acting at the direction of defendant LIM, met with an undercover agent ("UC1") posing as an associate of CHS2 in order to discuss the transportation of cocaine from California to Canada.

35.  On or about March 28, 2018, in Los Angeles, defendant SHEPHERD waited in a vehicle outside the location where defendant SAROYA met with UC1 posing as an associate of CHS2.

36.  On or about April 4, 2018, using coded language in a text message, defendant SAROYA informed defendant ERASTO that he would remove controlled substances from the Extra Space Storage locker, which defendants ERASTO and GALIC had rented the previous month, that evening.

37.  On or about April 4, 2018, in Redlands, California, defendants SAROYA and SHEPHERD removed controlled substances from the Extra Space Storage locker.

38.  On or about April 4, 2018, in Redlands, California, defendants SAROYA and SHEPHERD put the controlled substances they had removed from the Extra Space Storage locker into the Public Storage locker.

39.  On or about April 5, 2018, in Redlands, California, defendant SAROYA and SHEPHERD transferred controlled substances from the Public Storage locker into a vehicle driven by defendant SAROYA.

40.  On or about April 5, 2018, in Kern County, California, defendant SAROYA knowingly and intentionally possessed approximately 46.6 kilograms of methamphetamine in his vehicle.

41.  On or about April 5, 2018, in Redlands, California, defendant SHEPHERD knowingly and intentionally possessed approximately 4.984 kilograms of a mixture and substance containing a detectable amount of cocaine in the Public Storage locker.

42.  On or about May 3, 2018, using coded language in a recorded prison visit video, defendant TAYLOR asked defendant SHEPHERD whether there were any controlled substances left in the Public Storage locker or the Extra Space Storage locker, to which defendant SHEPHERD replied that all of the controlled substances had been seized by law enforcement.

43.  On or about May 3, 2018, using coded language in a recorded prison visit video, defendant SHEPHERD assured defendant TAYLOR that defendant SHEPHERD would not cooperate with law enforcement.

44.  On or about May 3, 2018, using coded language in a recorded prison visit video, defendant TAYLOR told defendant SHEPHERD that the organization would help defendant SHEPHERD with his legal case after his arrest.

45.  On or about May 3, 2018, using coded language in a recorded prison visit video, defendant SHEPHERD told defendant TAYLOR that other conspirators may be cooperating with law enforcement.

                Pick Up of Approximately 30 Kilograms of Sham Cocaine

46.  On or about May 4, 2018, using coded language in a series of text messages, defendant LIM sent CHS2 a code name, phone number, and dollar bill serial number for defendant WALKER so that CHS2 could arrange for defendant WALKER to pick up 36 kilograms of cocaine from CHS2 on behalf of defendant LIM.

47.  On or about May 9, 2018, using coded language in a series of text messages, defendant LIM sent CHS2 a code name, phone number,

and dollar bill serial number for defendant LIANG so that CHS2 could arrange for defendant LIANG to pick up 36 kilograms of cocaine from CHS2 on behalf of defendant LIM.

48.   On or about May 9, 2018, using coded language in a recorded telephone call, defendant LIM, pretending to be defendant LIANG, attempted to arrange a meeting with an undercover agent posing as an associate of CHS2 ("UC2") to pick up cocaine.

49.   On or about May 15, 2018, using coded language in a recorded telephone call, defendant LIANG arranged to meet UC2 the following morning to pick up cocaine on behalf of defendant LIM.

50.   On or about May 15, 2018, using coded language in a text message, defendant LIM told CHS2 to have UC2 distribute only 30 kilograms of cocaine to defendant LIANG, and that another courier would pick up the remainder of the cocaine to be delivered to defendant LIM.

51.   On or about May 16, 2018, using coded language in a text message, defendant LIANG told UC2 to bring use one luggage bag with wheels to hold all of the cocaine that UC2 would provide to defendant LIANG that day.

52.   On or about May 16, 2018, in Costa Mesa, California, defendant LIANG picked up from UC2 approximately 30 kilograms of a substance defendant LIANG believed to be cocaine.

53.   On or about May 16, 2018, using coded language in a series of text messages, defendant LIANG told defendant LIM that he opened one of the packages he received from UC2 and the cocaine appeared to be of poor quality; to which defendant LIM responded that defendant LIANG should return the substance to UC2.

54.  On or about May 16, 2018, using coded language in a series of text messages, defendant LIM told CHS2 that the cocaine defendant LIANG picked up from UC2 was not real cocaine, and that defendant LIANG wanted to return the cocaine.

55.  On or about May 16, 2018, in Costa Mesa, California, defendant LIANG knowingly and intentionally possessed approximately 14.6 grams of cocaine base and drug paraphernalia.

Possession with Intent to Distribute Approximately 90 Kilograms of Cocaine

56.  On or about May 21, 2018, using coded language in a series of text messages, defendant WALKER asked whether defendants JONER and TORRES had confirmed the next delivery of cocaine, to which defendant JONER replied that the delivery was confirmed for Wednesday, but defendant TORRES then clarified that the delivery had not yet been confirmed.

57.  On or about May 23, 2018, using coded language in a text message, defendant TORRES instructed defendant WALKER to leave the next morning to pick up cocaine in California.

58.  On or about May 25, 2018, using coded language in a series of text messages, defendant WALKER informed defendants JONER and TORRES that the delivery of cocaine would be delayed by seven hours, and defendant JONER instructed defendant WALKER to offer to pay money to expedite the delivery.

59.  On or about May 26, 2018, using coded language in a text message, defendant TORRES informed defendant WALKER that the cocaine delivery was scheduled for that morning.

60.  On or about May 26, 2018, using coded language in a series of text messages, defendant WALKER informed defendants TORRES and

JONER that defendant WALKER was scheduled to arrive in Washington State with cocaine the following night.

61.  On or about May 26, 2018, using coded language in a series of text messages, defendant TORRES informed defendants WALKER and JONER that they would transport the cocaine across the United States-Canada border that Monday.

62.  On or about May 26, 2018, in Fresno, California, defendant WALKER knowingly and intentionally possessed approximately 90.2 kilograms of a mixture and substance containing a detectable amount of cocaine.

63.  On or about May 27, 2018, using coded language in a text message, defendant WALKER told defendant TORRES that a federal agent was watching defendants TORRES and JONER.

64.  On or about June 2, 2018, using coded language in a text message, defendant LB told defendant JONER that they should try to cross the United States-Canada border without any drugs to see if they are stopped by law enforcement at the border, to which defendant JONER agreed.

65.  On or about June 3, 2018, in his residence in Fall City, Washington, defendant JONER knowingly and intentionally possessed approximately 0.713 grams of a mixture and substance containing a detectable amount of cocaine, approximately $41,526 in U.S. currency, and six firearms.

66.  On or about June 6, 2018, using coded language in a series of text messages, defendant JONER told defendant LB that a third party could get a report of defendant WALKER's traffic stop, during which law enforcement had seized approximately 90.2 kilograms of cocaine; defendant LB replied that they had to show their Mexican

drug suppliers some documentation of the seizure to prove the cocaine had been seized by law enforcement to avoid owing the drug suppliers half of the value of the seized cocaine.

67. On or about June 9, 2018, using coded language in a text message, defendant LB asked defendant JONER whether defendant LB could send a third party to pick up at least half of the $1,055,700 that defendant JONER owed to Mexican drug suppliers for the cocaine that law enforcement had seized from defendant WALKER.

68. On or about June 12, 2018, using coded language in a text message, defendant JONER told defendant LB that defendant JONER was working on acquiring the money owed to Mexican drug suppliers.

Search Warrant of Defendant MCNABB's Residence

69. On or about November 7, 2018, in his residence in Sultan, Washington, defendant MCNABB knowingly and intentionally possessed approximately 4.797 grams of a mixture and substance containing a detectable amount of cocaine and a loaded Smith and Wesson revolver.

Discussions About Continuing Drug Trafficking Business

70. On or about January 22, 2019, using coded language in a text message, defendant ORANGE TANG told CHS2 that unnamed co-conspirators were investigating whether CHS2 was responsible for the arrest of defendant LUANGKHAMDENG on June 10, 2017.

71. On or about January 29, 2019, using coded language in a series of text messages, defendant ORANGE TANG told CHS2 that defendant ORANGE TANG had cocaine buyers in Australia and was interested in meeting with CHS2's associate to discuss exporting cocaine to Australia.

72. On or about February 14, 2019, using coded language in a text message, defendant ORANGE TANG told an individual he believed to

be an associate of CHS2, but who was, in fact, an undercover agent ("UC2"), that defendant ORANGE TANG would like to partner with UC2 to transport cocaine to Australia for further distribution there.

73.   On or about February 18, 2019, using coded language in a text message, defendant ORANGE TANG asked UC2 whether defendant ORANGE TANG could purchase cocaine in Los Angeles.

74.   On or about February 19, 2019, using coded language in a text message, defendant ORANGE TANG told UC2 that defendant ORANGE TANG wanted to buy 20 to 30 kilograms of cocaine from UC2 every 10 days.

75.   On or about February 27, 2019, using coded language in a series of text messages, defendant ORANGE TANG told UC2 that defendant ORANGE TANG would wire payment in U.S. dollars to Mexico after defendant ORANGE TANG's co-conspirators received the cocaine from UC2.

76.   On or about April 12, 2019, in a text message, defendant ORANGE TANG gave UC2 a phone number to use in communicating with defendant ORANGE TANG about drug trafficking.

77.   On or about April 12, 2019, in a recorded phone call, defendant BARUCA told UC2 that defendant ORANGE TANG had instructed defendant BARUCA to find out from UC2 how much cocaine he could provide to defendant ORANGE TANG's organization.

78.   On or about April 12, 2019, using coded language in a series of text messages, defendant ORANGE TANG assured UC2 that defendant BARUCA was his "partner" who operates the organization's drug trafficking business in Vancouver.

COUNT TWO

[21 U.S.C. § 963]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about May 3, 2019, in Los Angeles County, Orange County, and San Bernardino County, each within the Central District of California, in the country of Canada, and elsewhere, defendants TENNY GUON LIM, also known as ("aka") "The Goat," aka "Max Power," aka "Wild," aka "Bruce," aka "Phil" ("LIM"), First Name Unknown Last Name Unknown ("FNU LNU"), aka "Orange Tang" ("ORANGE TANG"), DARIO BARUCA, aka "Ventura," aka "Fat Dario" ("BARUCA"), TAO BO LIANG, aka "Phil," aka "Boobz" ("LIANG"), NIKOLA GALIC, aka "Leo" ("GALIC"), ABATE SAMUEL ERASTO, aka "Robert" ("ERASTO"), JUMSHER SINGH SAROYA, aka "Larry Bird" ("SAROYA"), MICHAEL ALAN SHEPHERD ("SHEPHERD"), ERNEST KWEKU TAYLOR ("TAYLOR"), SAYSANA LUANGKHAMDENG, aka "Say," aka "George," aka "Wheels" ("LUANGKHAMDENG"), FNU LNU, aka "LB," aka "Deathmetal" ("LB"), TYE MCNABB ("MCNABB"), DAVID BRUNO JONER, aka "Boss Bob" ("JONER"), AMY KIM HARTLMUELLER-TORRES, aka "Betty" ("TORRES"), and JEFF ALLYN WALKER, aka "Mark" ("WALKER"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally:

1.   Import into the United States 3,4-Methylenedioxyamphetamine ("MDMA" or "ecstasy"), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), (b)(3);

2.   Export from the United States at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title

18

21, United States Code, Sections 953(a), 960(a)(1), (b)(1)(B)(ii); and

3.    Export from the United States at least 500 grams of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 953(a), 960(a)(1), (b)(2)(B)(ii).

B.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED</u>

The objects of the conspiracy were to be accomplished, in substance, through the means set forth in Section B, Paragraphs 1 through 9, of Count One, which are hereby re-alleged and incorporated by reference as if fully set forth herein.

C.   <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants LIM, ORANGE TANG, BARUCA, LIANG, GALIC, ERASTO, SAROYA, SHEPHERD, TAYLOR, LUANGKHAMDENG, LB, MCNABB, JONER, TORRES, and WALKER, and others known and unknown to the Grand Jury, committed various overt acts in Los Angeles County, Orange County, and San Bernardino County, each within the Central District of California, in the country of Canada, and elsewhere,

//

//

//

//

1  including, but not limited to, Overt Acts 1-78, as set forth in Count

2  One, which are hereby re-alleged and incorporated by reference as if

3  fully set forth herein.

4

5                                    A TRUE BILL

6

7                                    /S/
                                     _____
8                                    Foreperson

9  NICOLA T. HANNA
   United States Attorney
10

11  Scott Garringer
    Deputy Chief, Criminal Division  For:
12  LAWRENCE S. MIDDLETON
    Assistant United States Attorney
13  Chief, Criminal Division

14  CAROL A. CHEN
    Assistant United States Attorney
15  Chief, International Narcotics,
       Money Laundering, and Racketeering
16     Section

17  VICTORIA A. DEGTYAREVA
    Assistant United States Attorney
18  International Narcotics, Money
       Laundering, and Racketeering Section
19

20

21

22

23

24

25

26

27

28